UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
BRANDON TOMONY.,

                      Plaintiff,

      -against-

COUNTY OF SUFFOLK, VINCENT F.
DEMARCO (Sheriff of Suffolk County),
DEPUTY "JOHN DOE" OF THE SUFFOLK
COUNTY SHERIFF'S DEPARTMENT,
DEPUTY "PETER POE" OF THE SUFFOLK
COUNTY SHERIFF'S DEPARTMENT,

                      Defendants.
-------------------------------------------------------X

**ORDER**
10-CV-5726 (SJF)(ETB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★    03 2013    ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On December 8, 2010, incarcerated plaintiff Brandon Tomony ("plaintiff") commenced this action against the County of Suffolk, Vincent F. Demarco, Sheriff of Suffolk County, and certain unnamed employees of the Suffolk County Sheriff's Department ("defendants") alleging, inter alia, deliberate indifference to his serious medical needs in violation of the Eighth Amendment. [Docket No. 20]. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c) on the ground that plaintiff failed to exhaust his administrative remedies. For the reasons that follow, defendants' motion is GRANTED.

I.    Background[1]

On June 15, 2009, plaintiff broke his wrist while playing basketball at Suffolk County Correctional Facility ("SCCF"). Amended Complaint [Docket Entry No. 21] ("Am. Compl.") at ¶ 10. Plaintiff was treated by a doctor at Stonybrook Orthopedic Assocation ("SOA") on June 23, 2009. Id. at ¶ 11. According to plaintiff, the doctor at SOA "explicitly instructed . . . [him] that it was 'imperative' due to the age of the break that he return in exactly one week to determine the extent of the

---

1    For purposes of the pending motion, the truth of the well-pleaded factual allegations in the complaint is assumed. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2011).

displacement and whether surgery would be necessary to set the bone back in place before the fracture began to heal." Id. at ¶ 12. Plaintiff was also informed by the doctor that a "failure to address the injury properly and in a timely manner would affect the future use of his wrist." Id.

On June 30, 2009, plaintiff was taken to SOA for his follow-up appointment in order to "assess the necessity of corrective surgery and if necessary, perform said surgery," but was transported back to SCCF before being seen by a doctor. Id. at ¶¶ 13-20. Upon his return to SCCF, plaintiff "was sent directly to his housing unit instead of first being seen by the jail's medical unit as he normally would have been upon his return from an outside medical appointment." Id. at ¶ 21.

When plaintiff was returned to SOA on July 7, 2009, "the doctor could no longer determine the degree of displacement within the wrist because of the extent of the healing that had occurred since the last x-rays were taken." Id. at ¶¶ 22-24. The doctor "cast the plaintiff's wrist stating that they just had to hope for the best." Id. The doctor instructed plaintiff to return in three (3) weeks to have the cast removed, but plaintiff missed the appointment due to a court appearance. Id. at ¶ 25.

On August 14, 2009, a doctor at SCCF removed plaintiff's cast and "noted a severe lack of range of motion in the plaintiff's wrist." Id. at ¶ 26. The doctor told plaintiff that "a fragment of bone appeared to be moving into the joint space" and ordered another set of x-rays. Id. at ¶ 27. According to plaintiff, "[t]his examination informed [him] that the actions of defendants on June 30, 2009 in removing him from the waiting room, had in fact caused him to suffer due to the fact that the wrist did not heal properly with his range of motion returning and pain subsiding." Opposition to Defendant's Motion Pursuant to Rule 12(c) [Docket Entry No. 57] ("Pl. Sur-Reply") at ¶10.[2]

On September 2, 2009, plaintiff was taken to see an orthopedist, who "noted the plaintiff's diminished range of motion and continued disuse in his wrist." Am. Compl. at ¶ 28. The orthopedist

---

2  Given the disposition of defendants' motion to dismiss the complaint, it is not necessary to determine whether plaintiff's filing of a sur-reply was proper, and defendants' motion to strike the sur-reply [Docket Entry No. 58] will be denied as moot.

"assured the plaintiff that the pain he was experiencing would subside and that the range of motion in his wrist would return." Id. Plaintiff alleges that he continues to "experience[] chronic pain and suffers from decreased use of his left wrist," and that "[t]he range of motion lost has never returned to any degree." Id. at ¶ 29. Plaintiff attributes these injuries to defendants' failure to provide him with treatment on June 30, 2009.

II. Motion for Judgment on the Pleadings Standard

In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011)

(quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "'A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

III. Discussion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(1). "[P]risoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (internal quotation marks omitted). New York law provides inmates with a three-step grievance and appeal procedure: (1) investigation and review by the inmate grievance resolution committee; (2) if appealed, review of the determination by the superintendent of the detention facility; and (3) if appealed, review and final determination by the Central Office Review Committee. See N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5; Medina v. Napoli, No. 07-CV-497, 2012 WL 5288713, at *4 (W.D.N.Y. Oct. 24, 2012).

It is undisputed that plaintiff failed to file a grievance relating to the allegations in his complaint. Plaintiff stated in his complaint that he did not do so because he "was not aware of any injury caused by incident [sic] until 2 months after," and "[t]here is a 45 day window within which an inmate has to grieve an incident." Complaint [Docket Entry No. 1] at II. Plaintiff also asserts that "the lack of availability of grievance forms at [SCCF] inhibited the plaintiff's exhaustion and estopps [sic] the defendants from raising the plaintiff's failure to exhaust as a defense." Plaintiff's Reply to Defendant's Motion Pursuant to Rule 12(c) [Docket Entry No. 55] ("Pl. Rep.") at ¶ 4.

To determine whether a plaintiff may be excused for failing to exhaust available administrative remedies as required by the PLRA, the Court must consider whether: (1) administrative remedies were, in fact, "available' to the prisoner; (2) the defendants forfeited the non-exhaustion defense by failing to preserve it or by taking affirmative action to inhibit the plaintiff's pursuit of available remedies; and (3) special circumstances "have been plausibly alleged" to excuse the plaintiff's failure to comply with the applicable procedural requirements. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see also Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011).

Plaintiff relies upon Borges v. Piatkowski, 337 F. Supp.2d 424 (W.D.N.Y. 2004), in support of his argument that his failure to exhaust his administrative remedies should be excused because he was unable to recognize the injury caused by defendants' actions until after his grievance was time-barred. In Borges, a dental drill burr was left in the tooth socket of the incarcerated plaintiff during a procedure in August 1996 to remove his wisdom tooth. Id. at 425. The plaintiff complained about pain in his mouth to the defendant dentist repeatedly over the course of three (3) to four (4) months, and was told that the pain was caused by his wisdom teeth. Id. The plaintiff was treated at a hospital approximately two (2) years after the initial surgery, and the hospital determined that there was a foreign object and a reactive lesion in the plaintiff's mouth. Id. Although the hospital provided a report to the dentist, he did not tell the plaintiff about the reactive lesion or the foreign object and did not provide any further treatment. Id. at 125-26. It was not until November 1998, after the plaintiff was transferred to a different prison, that he was told about the foreign object and given proper treatment. Id. at 426. In denying the defendant's non-exhaustion defense, the court found that special circumstances existed to justify the plaintiff's failure to exhaust his remedies because the plaintiff could not have known during the time available to file a grievance that the dentist "may have known of the nature of his medical condition and may have intentionally refused to provide medical care to treat that condition." Id. at 427.

Plaintiff's reliance on Borges is unavailing. "An inmate seeking to be relieved from technically exhausting his administrative remedies must allege facts showing that he made reasonable attempts to exhaust his remedies." Veloz v. New York, 339 F. Supp.2d 505, 516 (S.D.N.Y. 2004). Even if plaintiff was not aware of a grievable harm until August 14, 2009, he failed to pursue administrative remedies in any manner, despite the fact that he remained incarcerated at SCCF for months afterward. Plaintiff's failure to allege facts showing that he made reasonable attempts to pursue available remedies requires dismissal of his complaint. See Burns v. Moore, No. 99-CV-0966, 2002 WL 91607, at *5 (S.D.N.Y. Jan. 24, 2002) (granting motion to dismiss on non-exhaustion grounds where plaintiff was not returned to the doctor for surgery on his broken wrist within one (1) week of the injury as directed but failed to file a grievance at any time during the several months that he remained incarcerated at the facility); Pritchett v. Artuz, No. 99-CV-3957, 2002 WL 31115543, at *3 (S.D.N.Y. Sept. 23, 2002) (granting motion to dismiss on non-exhaustion grounds where the plaintiff failed to file a grievance at any time and argued that "he did not know his arm was broken [on December 29, 1998] until he was treated on February 17, 1999, and that he, therefore, was not aware that he had been denied proper medical care at any time prior to February 17, 1999").

Plaintiff asserts that filing a grievance would have been futile because it would have been rejected as untimely. New York law provides that "[a]n inmate may request an exception to the time limit for filing a grievance," and that the grievance program supervisor "may grant an exception . . . based on mitigating circumstances" but may not grant an exception "if the request was made more than 45 days after an alleged occurrence." N.Y. COMP. CODES R. & REGS. tit. 7 § 701.6(g). "An inmate may pursue a complaint that an exception to the time limit was denied by filing a separate grievance." Id. Because plaintiff never attempted to file a grievance, the Court cannot determine whether prison officials would have deemed plaintiff's grievance to be untimely or have deemed the forty-five (45) day period for requesting an extension of time to have elapsed. Plaintiff's failure to exhaust his administrative remedies cannot be excused based upon plaintiff's mere speculation that his grievance

would have been denied. See, e.g., Harris v. N.Y.C. Dep't of Corrections, No. 00-CV-7164, 2001 WL 845448 (S.D.N.Y. July 25, 2001) ("[B]ecause the complaint does not even allege that [the plaintiff] attempted to use the [inmate grievance program] and was rebuffed, he simply does not raise a credible inference that the [inmate grievance resolution committee] was nonexistent or ineffectual."); Duvall v. Dallas Cnty., Tex., No. 05-CV-2431, 2006 WL 3487024, at *5 (N.D. Tex. Dec. 1, 2006) (holding that it was premature to determine whether grievance procedures were unavailable due to the plaintiff's physical illness where the plaintiff never filed a grievance and the defendant never rejected an attempt to exhaust as untimely); Looman v. Montana, No. 11-CV-143, 2012 WL 5287949, at *4 (D. Mont. Aug. 7, 2012) ("As a matter of law, a grievance remedy remains available to an inmate if the grievance policy permits an inmate to request an extension of a deadline under conditions specified in the policy. If an inmate fails to request an extension as permitted under the policy, the inmate has not pursued available remedies and the administrative remedies cannot be deemed exhausted.") (citation omitted); Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.").

Moreover, plaintiff was aware of a grievable harm prior to August 14, 2009. Plaintiff knew on June 30, 2009 that he was not allowed to attend his follow-up appointment, despite the doctor's previous instruction "that it was 'imperative' due to the age of the break that he return in exactly one week to determine the extent of the displacement and whether surgery would be necessary to set the bone back in place before the fracture began to heal," and was informed on July 7, 2009 that the doctor could no longer determine the degree of displacement in his wrist due to the delay in treatment. Id. at ¶¶ 12, 22-25. Therefore, unlike the plaintiff in Borges who did not know the cause of his pain or that he was being denied appropriate medical care, plaintiff was fully aware of the need for prompt medical treatment, yet nonetheless failed to pursue available administrative remedies when his treatment was delayed. See Burns, 2002 WL 91607, at *5; Lee v. Johnson, No. 12-CV-112, 2012 WL 4757740, at *2 (N.D. Ind. Oct. 5, 2012) (granting motion to dismiss on non-exhaustion grounds where the plaintiff

waited five (5) months to file a grievance after learning at an outside hospital evaluation that he was injured by the prison's delay in providing medical treatment). Cf., e.g., Starnes v. Raminieni, No. 07-CV-484, 2009 WL 2016384, at *4 (N.D.N.Y. July 7, 2009) (rejecting non-exhaustion defense where the plaintiff did not learn that the defendants had diagnosed him with hepatitis and failed to provide treatment until three (3) years after the diagnosis); Williams v. Hurley, No. 05-CV-1022, 2007 WL 1202723, at *6 (S.D. Ohio 2007) (rejecting non-exhaustion defense where the plaintiff learned over two (2) years after receiving treatment that prison doctors failed to diagnose his lung cancer).

Given that no special circumstances excuse plaintiff's failure to exhaust his administrative remedies, the Court must consider whether defendants should be estopped from raising a non-exhaustion defense. See Ziemba v. Wezner, 366 F.3d 161, 163-64 (2d Cir. 2004) (remanding to district court to consider whether the defendants were estopped from asserting non-exhaustion defense in light of the plaintiff's allegations that prison officials prevented him from exercising remedies by beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another prison). Plaintiff's allegations here, even if true, do not support a finding that defendants took affirmative action to prevent him from exercising his available remedies.

According to plaintiff, "[a]lthough grievance forms are said to be available to inmates from the officer on duty in each housing unit, in practice, requests made to those officers on duty are uniformly and quite rudely denied." Pl. Opp. at ¶ 11. Rather, "[t]he only 'regular' source for grievance forms was the law library," but "more often than not, requests made there were met with the claim that none were available until the next law library session," and "each housing unit was only called to the law library . . . once every 10 days." Id. at ¶ 12. Plaintiff asserts that "[t]hese circumstances . . . denied [him] the opportunity to file a grievance within any relevant time period." Id. at ¶ 12.

Plaintiff's allegation that he was denied access to grievance forms during the period relevant here is belied by the fact that he filed a grievance form regarding an unrelated matter on August 17, 2009, three (3) days after he allegedly learned of the injury caused by defendants' denial of medical

care. Defendants' Reply Affirmation [Docket Entry No. 56-6 ("Def. Reply") Ex. A. Moreover, even if plaintiff was unable to obtain an official grievance form, New York law permits the filing of grievances on any plain piece of paper, see N.Y. COMP. CODES R. & REGS. tit. 7 § 701.5(a)(1) ("If this [grievance] form is not readily available, a complaint may be submitted on plain paper."), and any delay in filing due to plaintiff's inability to obtain an official form may have been excused at the discretion of prison officials, had plaintiff attempted to file a grievance at all, see N.Y. COMP. CODES R. & REGS. tit. 7 § 701.6(g). Given plaintiff's failure to make reasonable attempts to file a grievance at any time, on an official form or otherwise, his allegation that official grievance forms were unavailable during the period in question does not support a finding that defendants took affirmative action to prevent him from pursuing his administrative remedies. See Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001) (per curiam) ("[The plaintiff] does not allege that there was no other source for obtaining a grievance form or that he made any other attempt to obtain a form or to file a grievance without a form. Under these circumstances, the dismissal without prejudice of this complaint was proper . . . ."). Accordingly, defendants are not estopped from asserting a non-exhaustion defense.

Lastly, plaintiff asserts that he "attempted to litigate this claim in state court and only brought the instant action when that proved futile," and "[i]t is therefore unreasonable to expect him to have exhausted the administrative remedies when that is not a requirement of a state court claim." Pl. Sur-Reply at ¶¶ 6, 34. This argument is without merit. Allowing prisoners to circumvent the administrative grievance procedure by litigating in state court until their grievances are untimely would undermine the purpose of the PLRA. See Giano v. Goord, 380 F.3d 670, 677-78 (2d Cir. 2004) ("[P]risoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred. Such a rule would not comport with the purposes of the PLRA, which sought to 'invigorate[ ] the exhaustion prescription.'") (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).

III. Conclusion

For the foregoing reasons, defendants' motion for judgment on the pleadings is granted, and plaintiff's complaint is dismissed without prejudice. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 3, 2013
      Central Islip, New York